HENRY CORNETT et al. v. STATE.

No. A-6062. Opinion Filed May 26, 1928.
(267 Pac. 869.)

See, also, 32 Okla. Cr. 326, 240 P. 1116.

Matson & Mathers, Henry Sitton, John Roberts, and M. Bristow, for plaintiffs in error.

Edwin Dabney, Atty, Gen., and J. H. Lawson, Asst. Atty. Gen., for the State.

EDWARDS, J. The plaintiffs in error, who for brevity will be referred to as defendants, were convicted in the district court of Caddo county on a charge of robbery, and

were each sentenced to serve a term of five years in the state penitentiary. Defendant Evinger having left the state and becoming a fugitive, his appeal was dismissed.

On the morning of February 11, 1924, three persons in a Dodge roadster car drove up to the First National Bank of Gracemont. Two of them got out and went into the bank, in which the only officer at the time was J. L. Cummings, bookkeeper, with a customer, C. L. Fowler. The two robbers who entered the bank covered Cummings and Fowler with pistols, forced them to lie down on the floor, and then took about $2,900 in money and $3,200 in bonds, after which they forced Cummings and Fowler in the vault. The other person with them remained in the car, and, after the robbery, the three drove away.

The theory of the state is that the actual robbery was committed by defendants Jack Newman, Paul Evinger, and one Happy Bohannon; that Evinger and Newman, who were not known in the vicinity of Gracemont, entered the bank, and Bohannon, a youth about 21 years of age, remained in the car; that defendants Henry Cornett and Walter O'Quinn planned and staged the robbery, and were the master minds of the transaction. The evidence is somewhat voluminous, and it is, in substance, that O'Quinn was running a hotel at Oklahoma City. Cornett was familiar with the country, and had Bohannon working for him on some land he controlled in Osage county. Both Cornett and O'Quinn had previously been convicted of bootlegging. Bohannon became a a witness for the state, and testified, in substance, that he had been working for Cornett, as had Newman and Evinger. There was some talk in Osage county of bank robbing, and the parties assembled at the hotel of O'Quinn at Oklahoma City, where the plans were finally made. Bohannon was sent to Enid to get a Ford coupe at the place of John Roberts, which he did, and drove it to the home of Ed Dubois a few miles from Gracemont, and there also came Evinger and Newman. On Friday

before the robbery on Monday, Cornett and O'Quinn arrived at Dubois' driving a Dodge roadster. They drove about the neighborhood looking out the roads and selecting a place to put the "get away" car. Early Monday morning Bohannon, Newman, and Evinger left Dubois' place. They went to Packard Chapel Church. In some brush near the building they parked the Ford coupe where it would not be observed from the highway, and they then drove into Gracemont with the Dodge roadster, robbed the bank, and fled back to Packard Chapel, concealed the Dodge car, and defendants Evinger and Newman concealing themselves for the time being, and Bohannon drove the Ford coupe to Dubois' place, where he remained until night. The defendants Cornett and O'Quinn on the morning of the robbery, soon after the other defendants left Dubois' place, also left, leaving word with Dubois to have the others of the party meet them that night at the Stansberry schoolhouse. That night Bohannon drove back near the Packard Church, got Evinger and Newman, and then went to the Stansberry schoolhouse and got Cornett and O'Quinn, and drove to the place of one Littrel, near Marlow. At Littrel's they made a partial division of the proceeds of the robbery, but left the Liberty bonds with O'Quinn to be disposed of, a further division to take place later. Dubois corroborated the testimony of Bohannon on several points, that is, that Cornett and O'Quinn came to his place on Friday before the robbery, later left and returned, were there on Monday morning of the robbery, and left word for the parties to meet them that night at the Stansberry schoolhouse; that, when they came there, they were driving a Dodge roadster; that Evinger, Newman, and Bohannon left on Monday morning with the two cars, as testified to by Bohannon. Bohannon later returned, and spent Monday afternoon after the robbery at his place, and left there that night. There is also evidence in part admitted by defendant O'Quinn that, after the prosecution had been instituted, he sent word of an incriminating nature to Bohannon, and with it

his ring. In this particular he was running parallel to Sir Walter Raleigh in his ring episode with Queen Elizabeth. Also defendant Cornett wrote a letter, and sent it by a convicted prisoner to an inmate of the Granite penitentiary, threatening the accomplice Bohannon, closing the letter with an admonition to "tear this up." Both Newman and Evinger denied that they were at the Dubois home, and denied any connection or knowledge of the robbery.

Cornett and O'Quinn admit they were at Dubois' place on Sunday before the robbery on Monday, and both say they were at Gracemont the day of the robbery. One Thompson testified that he saw the car of Cornett and O'Quinn not far from the bank just before the robbery. Other witnesses corroborate on other points. Taken altogether, there is no question but that the testimony of the accomplice Bohannon is amply corroborated by other evidence tending to connect the defendants here, Cornett, O'Quinn, and Newman, with the commission of the offense charged.

The first assignment of error argued is that the court erred in instructing the jury that the minimum punishment for the offense charged is confinement in the penitentiary for a term of five years. The law in force at the time of the robbery, to wit, February 11, 1924, was article 24 of chapter 6, Comp. Stat. 1921, as amended by chapter 85, Session Laws 1923. There has been since a further amendment by chapter 44, Session Laws 1925. It has been held by this court several times that the Statutes of 1923 and 1925 are not statutes of definition but of classification, which provide an enlarged punishment for robbery by the use of firearms. Wells v. State, 34 Okla. Cr. 179, 245 P. 1007; Wissinger v. State, 39 Okla. Cr. 324, 264 P. 631; Simpson v. State, 40 Okla. Cr. 58, 266 P. 783.

The information in this case pleads robbery by the use of firearms, and the punishment should have been

assessed under chapter 85, Session Laws, 1923, at not less than 25 years in the state penitentiary. Even though the minimum punishment fixed for robbery by firearms was at the time 25 years, yet a robbery by firearms might have been so pleaded that the general statute, article 24, would have applied as to punishment, and not the enlarged punishment, as provided by chapter 85, Session Laws 1923, supra, but here the pleading brings the case within the law of 1923, and it was error for the court to submit as a minimum punishment confinement at 5 years instead of 25 years. In the record before us no exception to the instruction was taken, no requested instruction submitted, and the matter was not called to the attention of the trial court at the trial, nor by the motion for a new trial. No error other than fundamental error will therefore be considered by this court.

It is well settled in this state that an appellant will not be heard to complain of errors which are made in his favor and are harmless to him. In the case of Coleman v. State, 6 Okla. Cr. 252, 118 P. 594, a defendant was charged with perjury, the punishment for which was fixed by statute at not less than 5, nor more than 10, years. The trial court erroneously instructed the jury that the punishment could not exceed a term of 5 years. The jury found defendant guilty, and fixed his punishment at a term of one year. This was assigned as error, and the court in affirming the judgment said:

"* * * Suppose we concede that appellant's punishment should have been inflicted under the second subdivision of section 2184, which would have required the jury to assess his punishment at not less than 5 nor more than 10 years' imprisonment, and that the court erred in instructing the jury that they might affix his punishment under the third subdivision of this section, which provides that the punishment should not exceed five years; would this error on the part of the court be one which appellant could complain of? Here, again, appellant is confronted

with the doctrine of harmless error, because, if it was an error, it did not deprive him of any right, but clearly inured to his benefit. Upon this feature of the case we are supported by the following authorities: 'Accused, who was charged with the offense of selling liquor in violation of a city ordinance, cannot complain that the penalty imposed by the police court was that prescribed by the state statute for the same offense, instead of the greater penalty prescribed by the ordinance, as he was not prejudiced thereby.' Orme v. Commonwealth, 55 S. W. 195, 21 Ky. Law Rep. 1412. In the case of Nichols v. State, 127 Ind. 406, 26 N. E. 839, the court said: 'Finally, it is contended by appellant that the court erred in rendering judgment against them on the verdict because the jury failed to assess a fine against them as part of the punishment. The verdict, with this exception, is perfect on its face. Of this objection we think it sufficient to say that the appellants should not be heard to complain of the fact that they did not receive all the punishment contemplated by the law which the jury found they had violated. In the case of Griffith v. State, 36 Ind. 406, it was said by this court: "It will hardly be contended we presume that the prisoner can successfully object that the punishment imposed was less than might legally be inflicted." While it is true that the jury might have imposed a fine in this case in addition to the punishment fixed by their verdict, their failure to do so was error in favor of the appellants and gives them no cause for complaint in this court.' The Supreme Court of Arkansas held: 'A sentence to a fine less than the minimum fixed by statute is an error of which the accused cannot complain; Mansfield's Dig. Ark. § 2468, providing that a judgment shall be reversed only for error to the prejudice of the accused.' Bishop v. State (Ark.) 14 S. W. 88.

"In McQuoid v. People, 8 Ill. [3 Gilman] 76, the Supreme Court of that state said: 'Properly the plaintiff should have been imprisoned as well as fined. No imprisonment is imposed upon the plaintiff. We consider the law upon this point as settled by this court that a defendant in a civil or criminal prosecution cannot assign for error a decision, order, or judgment of a court which is manifestly in his favor,' — citing cases. In the case of Covy v.

State, 4 Port. (Ala.) 186, the court said: 'The only objection that can be assigned for error on the latter motion (in arrest of judgment) is that the fine assessed by the jury was less than the law of 1826 authorized. To this it may be replied that defendant cannot complain if the fine is less than what the law considers their just deserts. No one can allege error in his own favor.' In the case of Ooton v. State, 5 Ala. 465, the court said: 'The judgment in the present case is for the fine assessed by the jury, and 30 days imprisonment as a punishment for the offense. * * * The defendant cannot object to the irregularity of the judgment; for instead of injuriously affecting his legal rights, it is certainly more beneficial to him than the law authorized.' In the case of People v. Bauer, 37 Hun (N. Y.) 407, the court said: 'It had jurisdiction of the person of the defendant and of the subject-matter, and the sentence conforms to the provisions of the statute. The only objection being that the length of term is insufficient, there was therefore no attempt to exert power beyond its jurisdiction. It did not exceed the time authorized by the statute.' In the case of People v. Rouse, 72 Mich. 59, 40 N. W. 57, it was held: 'It is no ground of error that a sentence is less than it might have been, so long as it does not involve a different kind of punishment than that allowed by law. * * * In Wattingham v. State, 37 Tenn. (5 Sneed) 64, the respondent was convicted of larceny, and sentenced to two years' imprisonment. The minimum fixed by the statute was three years. The court held that the rule that a party cannot assign for error that which is for his own advantage applies as well to criminal cases as to civil proceedings: that the error was formal merely, and could not avail the prisoner. Other cases to this effect are the following: Barada v. State, 13 Mo. 94; People v. Burridge, 99 Mich. 343 (58 N. W. 319); Harmison v. City of Lewiston, 153 Ill. 313 (38 N. E. 628, 46 Am. St. Rep. 893); State v. Evans, 23 La. Ann. 525; People v. Trainor, 57 App. Div. 422, 68 N. Y. Supp. 263.' "

See, also, 16 C. J. pp. 1311, 1312, §§ 3092, 3093.

Complaint is also made that the court erred in refusing certain instructions requested by defendants. One of

these requests which is particularly stressed submits to the jury the question whether or not Ed Dubois, one of the main witnesses for the state, was an accomplice, and, if so, a conviction could not be had on his testimony. The question as to whether or not a witness is an accomplice is usually a question of fact arising from the evidence, and in such case must be determined by the jury. Where the facts are undisputed, it is ordinarily a question of law for the court. Where it is a question of fact and a request that the matter be submitted to the jury is made, the question should be submitted to the jury under appropriate instructions. It is not required, however, that the question be submitted to the jury where there is no evidence that the witness is an accomplice. Shields v. State, 32 Okla. Cr. 344, 240 P. 661; Perdue v. State, 40 Okla. Cr. 9, 266 P. 514.

There is no evidence in the record on the part of the state that Dubois had any connection or knowledge of the comtemplated robbery of the bank. It is not the theory of any of the defendants, nor does their testimony support the contention, that Dubois was an accomplice. Defendants were therefore not entitled to an instruction submitting this matter to the jury.

Some other contentions are presented by the briefs, all of which have had attention, but none of which disclose any material error.

The case is affirmed.

DOYLE, P. J., and DAVENPORT, J., concur.