**Robert SANDERS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 42806.**

Court of Criminal Appeals of Texas.

March 25, 1970.

Rehearing Denied May 13, 1970.

Evans, Marshall, Graham & Ribak, by R. Norvell Graham, Jr., San Antonio, for appellant.

Ted Butler, Dist. Atty., Earl Hill, Vernon Flournoy and Sparta Bitsis, Asst. Dist. Attys., San Antonio, and Jim D. Vollers, State's Attorney, Austin, for the State.

## OPINION

BELCHER Judge.

The offense is robbery with firearms; the punishment, forty years.

This is a companion case to Mayes v. State, Tex.Cr.App., 453 S.W.2d 160, this day decided.

The appellant challenges the sufficiency of the evidence to support the conviction.

The evidence reveals that on the night of August 27 and 28, 1968, while Wilfred Engelke, the manager of the Wayfarer Motor Hotel, was in his apartment, Paul Hughes, the night manager and auditor, and Miguel Hidalgo, the night porter, were on duty at the Wayfarer. About 2 a. m., that night, three masked Negro men appeared in the hotel. Two of the men entered the office with their pistols drawn, and one man remained at the door. Hughes and Hidalgo were both struck with pistols requiring medical attention. The first man to enter the office was wearing a yellow jacket and a black mask, and the other two were wearing dark clothes and black masks.

From her automobile which was parked near the Wayfarer Motor Hotel on the same night, Michael Cain saw a Negro man sitting under the steering wheel of an automobile parked nearby with the motor running and looking toward the hotel. A few minutes later three Negro men came from the rear of the hotel office; one entered the front and two entered the rear seat of the waiting car. In a short time she became frightened and drove away leaving them there. She did not know and could not identify any of the Negro men.

In response to a police radio robbery dispatch about 2 a. m., Officers Wylie and Calvert pursued an automobile occupied by four Negro men. While in pursuit, various objects were thrown from the car as it was driven at an excessive speed. The pursuit ended when the car crashed into a tree. Three Negro men left the car, two fled on foot, Arthur Thomas Mayes was arrested nearby when shots were fired, and the appellant, Sanders, was taken from the rear seat of the car and arrested.

Numerous articles were found in the wrecked car including about $590.00 in money. The cash box which contained money, bank deposit bags, checks, and deposit slips was also found in the car. All of these articles were sufficiently identified as having been taken during the robbery of the hotel to authorize their admis-

sion in evidence. About $2,000.00 in money and the articles named were taken from Hughes without his consent and while he was in fear of his life.

A yellow jacket found in the wrecked car was identified as the one worn by the first robber to enter the hotel office.

The evidence reveals that the appellant worked as a porter at the Wayfarer from 3 to 11 p. m., until August 15, before the robbery on August 28. The porter, Miguel Hidalgo, was also called "Mike." During the robbery, one of the robbers called Hidalgo "Mike" in speaking to him.

Arthur Thomas Mayes, called as a witness by the appellant, testified that he owned the automobile used by him and the appellant on the night of August 27 and 28. After an evening of drinking intoxicants on August 27, they stopped at the Blue Room about 12 a. m., that night. Due to his intoxication, the appellant remained in the rear seat of the car while Mayes entered the Blue Room looking for certain men. On his return, three men approached his car and asked about a place to spend the night, and the appellant recommended the Wayfarer. The three men being without transportation, Mayes and appellant took them to the Wayfarer. Mayes sat in the car while appellant lay on the rear seat. When the men returned, one said there were no rooms available; two got in the rear and one in the front seat. They asked Mayes to take them to "Fort Sam." On the way he noticed the police were behind his car. At "Fort Sam," when the police turned their red light on, the man in the front seat pulled a pistol and ordered him to "step on the gas." The pursuit ended when the appellant's car hit a curb on a dead-end street and came to rest against a tree. Two men fled and Mayes and the appellant were arrested at the scene. While they were being pursued, Mayes saw "some going out my window, but I (Mayes) didn't know it was money." One of the men who fled had said he was stationed at "Fort Sam."

Mayes denied robbing the Wayfarer or participating in it in any manner.

The appellant, testifying in his own behalf, denied robbing or participating in the robbery of the Wayfarer. He testified that he and Mayes were drinking, that he "passed out," and does not remember what happened at the Blue Room except that Mayes woke him and asked if it would be all right to take the three men to the Wayfarer; that he did not know the men and would not know them if he saw them again. The next thing the appellant remembers was when the car hit the tree; he heard some shots, and he was arrested. At this time the officers told him of the robbery in which he denied participation. The appellant testified that he did not recall the chase, and he never saw anything thrown out the window.

The court charged the jury upon the law applicable to principals and circumstantial evidence.

The evidence is sufficient to support the conviction.

The appellant contends that: "The Court erred in commencing Defendant's trial during the time when the trial of the Co-Defendant was in progress because severance had been granted."

The formal bill of exception reveals that the appellant and Arthur Thomas Mayes were separately indicted for the robbery charged in this case. A severance was granted, and Mayes was first tried. The Mayes trial began at 2 p. m., December 10, 1968, and was recessed at 11:50 a. m., on December 11, until 4:25 p. m., that day. During the recess a jury was selected to try the appellant. The Mayes trial was concluded by the return of the jury's verdict finding him guilty at 12:23 p. m., December 13. The testimony in appellant's case began at 11:25 a. m., December 13, and the first witness was still testifying at the time the verdict was returned in the Mayes case. The state did not rest in appellant's case until 12:23 p. m., December 16, 1968.

■ The record does not reflect that the jury in appellant's case saw, heard, knew or was influenced by anything that occurred during or about the Mayes trial. In this state of the record, no error is presented.

In the third ground it is contended that: "The Court erred in permitting the State to present inflammatory and inadmissible evidence during the trial and in permitting the State to inject inflammatory and inadmissible evidence during the State's closing argument to the jury."

■ The testimony complained of arose during the trial on the issue of punishment and during the cross-examination of appellant's reputation witness:

"Q Well, let me ask you, Reverend Johnson, whether or not you are aware or have you heard that Robert Johnson has been arrested—Robert Sanders, beg your pardon; has been arrested some 14 times over the past ten years.

"Mr. Graham: Your Honor, I would object to that.

"A No, I did not hear all of that.

"The Court: Wait a minute; don't answer. What is your objection? Please state your objection.

"Mr. Graham: My objection is that it is not proper examination by the State, and that it's a general assertion. It's not a proper form of the question to elicit the proper answer.

"The Court: I will overrule the objection.

"Mr. Graham: Note my exception.

"Q (Mr. Hill continuing:) Now, to be more specific about these arrests, Reverend Johnson, have you heard that in July, 1958, he was arrested for murder?

"A Yes, I know about that.

"Q Have you heard that in 1962 he was arrested for assault to murder?

"A No, I did not hear that.

"Mr. Graham: Your Honor, I am going to object to this whole line of questioning. ·

\* \* \* \* \* \*

"The Court: The Court will permit it within limits. I call your attention to a number of things, such as remoteness and things of that sort. I can't rule on these until I hear them.

"Q (Mr. Hill continuing:) Now, I understood you had heard of the 1958 arrest for murder, but you had not heard of the 1958 arrest for assault to murder?

"A No.

"Q All right. Mr. Graham: I object to that—well, I will withdraw it.

"Q (Mr. Hill continuing:) Have you heard, Reverend Johnson, that in 1965 he was arrested for unlawfully carrying a pistol?

"A No, I did not hear that."

On re-direct examination it was shown that the indictment against the appellant for murder was dismissed.

It appears from the witness's testimony that he had heard of some of the 14 arrests.

In Smith v. State, Tex.Cr.App., 411 S. W.2d 548, this Court said:

"It has been held that witnesses attesting the good reputation of an accused may, as affecting the weight, credibility and sincerity of their testimony, be asked upon cross-examination as to whether they have heard of acts of the accused inconsistent with that reputation. Vance v. State, Tex.Cr.App., 365 S.W.2d 182; Linton v. State, 171 Tex.Cr.R. 213, 346 S.W.2d 320; Willard v. State, 170 Tex. Cr.R. 118, 338 S.W.2d 472; Edmond v. State, 169 Tex.Cr.R. 637, 336 S.W.2d 946."

In his brief the appellant complains of the following jury argument on the issue of punishment:

"You've got a man here who, because of the criminal record that you've heard about and know about, has no feeling whatever for law and order in this community; has none whatever."

The state later argued that:

"Now, from all of the facts and circumstances and some things you don't know, bless your hearts—

"Mr. Graham: Your Honor, I submit that that's highly improper and prejudicial."

The statement of the appellant is treated as an objection.

The court sustained the objections and instructed the jury to disregard the arguments. The motion for mistrial was overruled.

Assuming that these grounds are properly presented under Art. 40.09, Vernon's Ann.C.C.P., and in light of the record and the prompt ruling of the court, there was no reversible error in refusing the motion for a mistrial.

Error is urged on the ground that the trial court failed to properly instruct the jury on all the law applicable to the case in that the charge fails to instruct the jury of the range of punishment for robbery by assault with firearms.

The state timely and properly gave notice that it would not seek the death penalty.

The appellant urges that if the jury was aware that the punishment for robbery by assault with firearms could be assessed at death it would be inclined to weigh the evidence more carefully, and the failure of the court to charge the jury as to the statutory punishment deprived him of a substantive right.

In considering the punishment authorized by Art. 1408, Vernon's Ann.P.C., and the provisions of Art. 1.14, C.C.P., when the state makes known in writing that it would not seek the death penalty, it is concluded that the trial court in charging the jury that if the verdict is guilty the defendant shall be punished by confinement in the Texas Department of Corrections for life, or for a term of not less than five years properly instructed the jury upon all the law applicable to punishment in the case. Head v. State, 160 Tex.Cr.R. 42, 267 S.W.2d 419. No error is presented.

The judgment is affirmed.