**Arthur Thomas MAYES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 42660.**

Court of Criminal Appeals of Texas.

March 25, 1970.

Rehearing Denied May 13, 1970.

Evans, Marshall, Graham & Ribak, by R. Norvell Graham, Jr., San Antonio, for appellant.

James E. Barlow, Dist. Atty., and Sparta Bitsis, Asst. Dist. Atty., San Antonio, and Jim D. Vollers, State's Atty., Austin, for the State.

OPINION

BELCHER, Judge.

The offense is robbery with firearms; the punishment, fifty years.

This is a companion case to Sanders v. State, Tex.Cr.App., 453 S.W.2d 162 this day decided.

The appellant challenges the sufficiency of the evidence to support the conviction.

About 2 a.m., August 28, 1968, while Michael Cain was sitting in her automobile which was parked near the Wayfarer Motor Hotel, she saw a Negro man sitting under the steering wheel of a maroon or faded red-colored automobile about a car length from her with the motor running, apparently looking and waiting for someone as he was moving back and forth on the front seat. After about five minutes three Negro men came from the rear of the Wayfarer Hotel office, one entered the

front and two the rear seat of the car. When she realized that they had seen her, she became frightened and drove away leaving them there. She did not know and could not identify any of the four men.

On August 28, 1968, Wilfred Engelke was manager of the Wayfarer Motor Hotel, Paul Hughes was the night auditor, and Miguel Hidalgo was the night porter.

The evidence reveals that while Hughes and Hidalgo were on duty about 1:55 a.m., August 28, three masked Negro men appeared in the hotel. Two with pistols drawn entered the office, and one remained at the door. Hughes was struck on the head with a pistol which caused much bleeding and twelve stitches to be taken. The first man to enter the office was wearing a yellow jacket and a black mask and the other two were wearing dark clothes and black masks. Hughes identified State's Exhibit No. 3 as the jacket the first man was wearing and Exhibit No. 2 as the mask he was wearing, but on voir dire he stated that they were similar to those he was wearing. Exhibit No. 1 was identified by Hughes as the restaurant money box which was taken from the filing cabinet by the robbers. On voir dire he was not absolutely positive but identified it by its general appearance saying, "I've handled that box many, many times, twice a day, for many months." Exhibit No. 4 was identified as a bank deposit bag used by the hotel. It was identified by a deposit slip inside the bag from the Wayfarer Club. Hughes testified that he saw this bag or one exactly like it removed from the filing cabinet and that he had handled it several times. Hughes testified that the robbers took $1942.52 belonging to the hotel without his consent while he was in fear of his life.

In response to a radio robbery dispatch about 2 a.m., Officers Wylie and Calvert saw a maroon-colored 1958 Ford convertible pass where they were parked, and while testifying identified the appellant as the driver of the car which was occupied by three other Negro men. While in pursuit, they saw various objects thrown from the car including currency and change (money) as the car was driven at an excessive rate of speed. The pursuit ended when the car went between two houses and crashed into a tree. Two of the Negro men fled on foot, another was taken from the car and was identified as Robert Sanders, and the appellant was arrested when he fell as shots were fired.

Numerous articles were found in the car including over $590.00 in money. A yellow jacket, marked as State's Exhibit No. 3 was found in the Ford. A bank deposit bag and deposit slips including one to the Wayfarer Club which was found in a bag were identified.

The record evidence shows that the appellant was the owner of the 1958 maroon-colored Ford.

The record further reveals that Robert Sanders, the man found in the car at the scene of the crash, worked as a porter at the Wayfarer from 3 to 11 p.m., until August 16, twelve days before the robbery. While working as a porter, Sanders was relieved at 11 p.m., by Miguel Hidalgo who was also called "Mike." During the robbery, one of the robbers called Hidalgo "Mike" in speaking to him.

The appellant, testifying in his own behalf, denied robbing or participating in any manner in the robbery of the Wayfarer Motor Hotel. He further testified that he was sitting behind the steering wheel in his car with the motor running at the Wayfarer, as was related by the witness Michael Cain, when the Negro men returned to his car; that he first realized the officers were in pursuit when he saw the red light; that, "I (appellant) saw someone tossing something out of the car, but I don't know whether it was money or not, sir." He further testified that he was forced to drive as he did because the man in the front seat was holding a pistol on him. Appellant testified that he knew only one

of the three men, and he was Robert Sanders, who sat in the rear seat.

It is concluded that the evidence is sufficient to support the conviction.

In grounds of error two and three the appellant contends that the trial court commented on the weight of the evidence and that such comments and interruptions were prejudicial to him; and further that the trial court's comments and demeanor toward defense counsel in the presence of the jury prejudiced his rights to a fair and impartial trial.

The record has been examined and considered in the light of the contentions made, the portions of the record referred to, and the authorities cited.

It is concluded that it would not materially contribute to the conclusions here drawn to set forth the numerous objections, comments, arguments, and rulings made during the trial of this case.

From the record as a whole, we fail to perceive any benefit to the state or injury to the appellant resulting from the matters presented. No reversible error is shown.

Error is urged on the ground that the trial court failed to properly instruct the jury on all the law applicable to the case in that the charge fails to instruct the jury of the range of punishment for robbery by assault with firearms.

The appellant urges that if the jury was aware that the punishment for robbery by assault with firearms could be assessed at death it would be inclined to weigh the evidence more carefully; and that the failure of the court to give the statutory punishment deprived him of a substantive right.

The state timely and properly gave notice that it would not seek the death penalty.

Prior to the trial the state waived the death penalty in accordance with Article 1.14, Vernon's Ann.C.C.P. The re-quirement "that in the charge which submits the issue of guilt or innocence there shall be included instructions showing the jury the punishment provided by law for each offense submitted" was deleted from Article 37.07(2a), V.A.C.C.P., by the 1967 amendment to that article. The record reflects that after the jury returned a verdict of guilty, the trial court assessed the punishment. In light of the fact that the punishment was assessed by the court the contention fails.

The judgment is affirmed.