WILLIAM MADISON HEAD V. STATE

No. 26,836. April 28, 1954

*J. C. Darroch*, Brownwood, for appellant.

*Wesley Dice*, State's Attorney, Austin, for the state.

MORRISON, Judge.

The offense is rape; the punishment, 15 years.

The sheriff of Mills County testified that he went to the home of appellant, armed with a search warrant, during the course of his investigation of a theft case but that, because of what was reported to him upon his arrival, he did not at that time make the search which he had planned. He stated that he saw the appellant and the prosecutrix coming out of the brush in the pasture; that he interrogated the prosecutrix, and she told him that the appellant had "been playing with her"; that he took both of them in to the courthouse for questioning; and that they both made written statements the same afternoon.

Appellant's confession, dated June 25, 1953, which was admitted in evidence, omitting the formal parts, reads as follows:

"About two or three weeks ago, I began to play with the private parts of Virginia Edens. This girl, Virginia Edens has often spent the night at my home. On about the night of June 23, 1953, I slept with the said Virginia Edens. I did try to have sexual intercourse with her and was successful in getting the head of my penis in her private parts.

"It is true that I have on several occasions played with the private parts of the said Virginia Edens, but this occasion of about the night of June 23, 1953, is the only time that I succeeded in penetrating her private parts.

"I know that the said Virginia Edens is a girl twelve years old.

"William M. Head"

The testimony of the prosecutrix is most unusual in that the majority of her answers consisted of nodding or shaking her head, which such answers were carefully noted by the able court reporter. We have examined her entire testmony with care and have concluded that she gave a rational, though embarrassed, report of her relationship with the accused.

She testified that she was twelve years old and that she lived with her parents and her two younger brothers on the same road out of Goldthwaite on which appellant resided. She stated that on June 23 the appellant secured her mother's permission and took her and her two brothers home with him to spend the night. She stated that while her brothers were playing the appellant asked her to take off her clothes and that when she refused he took them off and put her on the bed and got on top of her and placed his private parts "at least a part of the way inside" her. She stated that the appellant had been attempting to do this before and had told her not to mention it to anybody. She stated that she and her brothers had gone swimming in the nude with appellant in a tank on the appellant's farm.

On cross-examination the prosecutrix admitted having signed a statement for the appellant's counsel but denied that she had told him that the appellant had not penetrated her body.

Appellant did not testify but offered the following witnesses in his behalf.

Mr. Booker testified that some three weeks after the day in question, at the request of appellant's counsel, he had accompanied him to the home of the prosecutrix, where a conversation was had with her and her father; that during the course of such conversation the prosecutrix denied that appellant had entered her body with his male organ and signed the following statement, which was introduced in evidence:

"About three weeks ago the Sheriff Mr. Stubblefield and a Mr. Cook drove out to the Head place. Bill Head and I and my two little brothers were there. Bill and I were in the car together and Mr. Stubblefield told Bill and me to get out and go to town and he took me to his office and he and Mr. Pribble wanted to know what had happened between me and Bill, and

I told them that Bill played around with me, but he did not put his male thing into me. I am sure of that, and I now tell you that he did not put his male thing into me.

"Virginia Eden"

Mr. Booker admitted that the prosecutrix appeared to be nervous and did not want to talk to them.

Appellant's attorney testified that he had gone with Mr. Booker to prosecutrix's home, that at first she refused to come out of the house "to talk about this transaction because she was afraid I was going to take her down and put her in jail" and stated that prosecutrix denied that appellant had "entered her privates, but that he had played around with her."

Dr. Childress testified that he had examined the prosecutrix at 8:00 P. M. on June 25 and found no bleeding in her female organ. He stated that the condition of her organ was such that it would permit a partial penetration of a male organ without causing bleeding, that he detected no evidence of penetration, but that her organ could have been penetrated a half an inch or so without leaving any evidence. The doctor seemed to be laboring under the impression that the assault upon the prosecutrix had occurred within a short while prior to his examination, but appellant's confession reflects that such had occurred two nights before.

Dr. Leskin, a psychiatrist from the Veterans Hospital in Waco, testified (and we think his testimony is very significant) that appellant had been a patient at his institution from 1947 to 1949, that he was mentally ill, had always shown sexual immaturity, and that his sexual reactions were not normal.

The appellant called prosecutrix's father as a witness. From his examination it is apparent that he is a man of very limited intelligence. He admitted that his daughter had told appellant's counsel that the appellant had not actually penetrated her and that she signed the statement which he had prepared. He also admitted that he had visited the accused in jail and carried him a cigar.

Appellant's father testified that following his military service in World War II the appellant had been committed to both the Austin State Hospital and the Veterans Hospital at Waco; that he had not fully recovered from his mental trouble; that appel-

lant had told him that he had not had intercourse with the prosecutrix; and that the appellant would confess to anything.

It was shown that appellant's sanity had legally been restored by the county court of Coryell County in 1949.

Sheriff Stubblefield testified on rebuttal that prosecutrix and appellant were not in an automobile at the time he first saw them on the day of the arrest, and Mr. Pribble, the county attorney, testified that he was out of town on the day the appellant confessed. If we accept their testimony as correct, then the statement given appellant's attorney was incorrect in at least two respects.

We have given considerable thought to the statement made by prosecutrix to appellant's counsel sometime after the offense and prior to the trial. We are confident that appellant's counsel accurately reported his conversation with prosecutrix, but we must take an objective view of the relationship of the parties in order to determine if we can from the entire record what happened on that Sunday afternoon when the appellant's counsel visited the prosecutrix.

It is obvious to us that a lawyer from the city, unknown to prosecutrix and her family, accompanied by a former county official, drove up to her rural home. They did not go to the door but honked the horn, and the prosecutrix's father came out to the automobile. He was told that they wanted to speak to his 12-year old daughter. He called her, but she did not want to come because she was afraid, possibly as appellant's counsel says, that he would take her down and put her in jail. She finally did come and was reluctant to talk. In all probability, she remembered that the last time she had reported appellant's misdeeds she was carried to the courthouse and interrogated by the officers. With that background in mind, we think it most logical that she would have signed anything in order to avoid any further embarrassment. Her temerity when called as a witness fortifies this conclusion.

This court, as always, is on guard against affirming a conviction in a rape case where the accusation may have had its origin in the imagination of a young girl, but we cannot bring ourselves to conclude that this is such a case.

We have written rather lengthily on the facts in reaching the conclusion that the evidence is sufficient to support the con-

viction. We shall now discuss appellant's contentions as briefly as possible.

We are at a loss to understand why no objections to the charge were made or why the learned trial court did not submit to the jury the lesser and included offenses of assault with intent to rape (Article 1162, V.A.P.C.) and attempt to rape (Article 1190, V.A.P.C.). The time to have raised this question, however, was before the charge was read to the jury.

Appellant's only objection to the confession made at the time it was introduced was as follows:

"I object to that part of the statement reading as follows, 'About two or three weeks ago, I began to play with the private parts of Virginia Eden.' I further object to this part of the statement, 'It is true that I have on several occasions played with the private parts of the said Virginia Eden.' I object to those on the ground that they are evidence of other acts and transactions other than the one the State is relying on for a convication in this case. They are irrelevant and immaterial and they are evidence of other offenses."

It has been the consistent holding of this court since Johns v. State, 155 Texas Cr. Rep. 503, 236 S.W. 2d 820, that proof of prior and subsequent acts of intercourse between the accused and the child prosecutrix were admissible as tending to explain and lend credence to the testimony concerning the conduct of the parties on the occasion charged in the indictment which would not otherwise appear plausible. See Gephart v. State, 157 Texas Cr. Rep. 414, 249 S.W. 2d 612.

After the confession was admitted, he added the objection that it had been obtained by means of an illegal arrest.

As noted originally, the prosecutrix made it known to the sheriff that the appellant had been "playing with her." Be that as it may, the appellant has confused illegal arrest and illegal detention following arrest. It is the detention and not the arrest which this court and the Supreme Court of the United States hold under some circumstances vitiates a confession. The confession introduced in evidence in this case was made shortly after appellant's arrest, and there is no claim that it was made as the result of police brutality or long and uninterrupted questioning.

The case at bar is readily distinguishable from Galaviz v. State, 82 Texas Cr. Rep. 377, 198 S.W. 946, and Blair v. State, 56 S.W. 622, upon which appellant relies. In neither of those cases was there a confession of the accused nor was there a history of mental illness which demonstrated itself in abnormal sexual reactions.

As noted, the appellant leveled no objections to the charge of the court, but now contends that the court committed fundamental error when he told the jury that they might assess his punishment at "life or any term of years not less than five." The penalty prescribed by the statute (Article 1189, V.A.P.C.) for rape is "death or by confinement in the penitentiary for life, or for any term of years not less than five." He relies upon two cases. His first case is Howard v. State, 18 Texas App. 348, decided in 1885. Such case is not authority because decided under Article 723, C. C. P., effective at that time. Such Article (which is now Article 666, V.A.C.C.P.) was amended in 1897, and a drastic change was made therein.

Appellant overlooks the holding of this court in Graham v. State, 73 Texas Cr. Rep. 28, 163 S.W. 726, decided after the amendment to Article 723, C. C. P. In the Graham case the court, as in the case at bar, incorrectly stated the punishment in a rape case in that he did not tell the jury that they might assess the punishment at death. There we held that the charge was beneficial to the accused and did not constitute reversible error.

His second case is Kerley v. State, 89 Texas Cr. Rep. 199, 230 S.W. 163. In that case the question was the number of challenges the appellant was entitled to in a capital case. In that case we held that, even though the prosecutor had stated that he would not insist upon the death penalty, the appellant was nevertheless entitled to the number of challenges allowed in a capital case and not authority for the contention here advanced.

We find that our sister state of Oklahoma has adopted the rule followed in the Graham case in Cornett, et al, v. State, 267 P. 869.

Finding no reversible error, the judgment of the trial court is affirmed.