**Raymond Arnold BEASLEY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 68964.**

Court of Criminal Appeals of Texas, En Banc.

March 11, 1987.

Abel Toscano, Jr., Harlingen, Larry Warner, Port Isabel, for appellant.

Rene Guerra, Dist. Atty., and Theodore C. Hake, Asst. Dist. Atty., Edinburg, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

W.C. DAVIS, Judge.

Appellant was convicted of capital murder. Upon the jury's return of affirmative

answers to the punishment issues,[1] punishment was assessed at death.

Appellant now contends the court erred in admitting into evidence his written confession. Although the wording of the ground of error and the greater part of appellant's argument go to the *voluntariness*[2] of the confession, we find that part of appellant's argument raises the question[3] of the legality of his arrest and its effect upon the confession's admissibility, which appellant urged below by pre-trial motion to suppress:

Evidence obtained during an unlawful detention is not admissible. A confession taken as a result of a violation of of the Fourth Amendment is not admissible. *Morales v. New York*, 396 U.S. 102, 90 S.Ct. 291, 24 L.Ed.2d 299 (1969). The mere giving of Miranda warnings does not dissipate the taint of an illegal arrest, so as to make the statement made during detention admissible. There is really no per se rule. The burden is on the prosecution. There is no "but for" rule. Miranda warnings are merely a factor along with the passage of time and intervening circumstances and the purpose and flagrancy of the official misconduct. *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).

At the hearing on pre-trial motions, appellant and the prosecuting attorney agreed to present evidence on the motion to suppress the confession and physical evidence, brought on the grounds of illegal arrest and unlawful search and seizure, together with evidence on the voluntariness of the confession. At that hearing it was developed that the victim, a police officer investigating a report that a burglar alarm had been triggered, had been shot to death by a single shot fired after what appeared to have been a struggle. Officers investigating the killing had found a tire tool and a pair of glasses nearby, and an eyewitness

---

1. *See* Art. 37.071(b)(1), (b)(2), V.A.C.C.P.

2. Our disposition of this case makes it unnecessary to abate the appeal for the entry of findings of fact upon the issue of voluntariness, which do not appear in the record.

3. Art. 40.09, Sec. 9, V.A.C.C.P.. See also *Ben-Schoter v. State*, 638 S.W.2d 902 (Tex.Cr.App. 1982).

had given a description of a person seen there immediately after the killing.

The commander of the uniformed division of the police department recognized that the description could be that of his son-in-law, and recognized the eyeglasses as similar or identical to those worn by him. Appellant's father-in-law, accompanied by a deputy chief and at least three other officers, then proceeded to appellant's apartment. When appellant answered the door, clad only in blue jeans, the officers noticed that he had what appeared to be fresh cuts and scrapes on his torso and arms. When asked where he had acquired the wounds, appellant answered that he did not know. Deputy Chief Williams testified that, after appellant said, "I don't know":

> I asked Mr. Beasley—correction; I told Mr. Beasley that he was going to have to come down to the Police Department and would he mind us coming in and looking around his apartment, while he got dressed.

Williams' testimony was the only evidence describing the arrest of appellant.

■ The burden is on the State to show that a warrantless arrest comes within an exception to the general rule that such arrests are unreasonable. *Wilson v. State*, 621 S.W.2d 799, 803–804 (Tex.Cr.App.1981). In the instant case, the State, upon appeal, argues that the evidence shows that strong suspicion of appellant ripened into probable cause upon the viewing of appellant's scratches by the officer, and that the decision not to wait for a warrant before arresting appellant was justified by the likelihood that appellant would escape.

Assuming, arguendo, that appellant's father-in-law's identification of appellant's glasses, combined with appellant's resemblance to the eyewitness' description, were not in themselves sufficient to establish probable cause to arrest appellant, it is nonetheless certain that the police knew of a way to confirm whether the glasses were indeed appellant's—which could clearly establish probable cause—without confronting appellant or alerting him to their interest in him. Shortly after appellant's arrest, the glasses—as well as a tire iron appellant used in the burglary to which the victim had responded—were identified by appellant's estranged wife as belonging to appellant. The officers, one of whom was the father of appellant's wife, were certainly aware that such an identification might be made before they confronted appellant.

The confrontation in the instant case is of the sort we suggest in *West v. State*, 720 S.W.2d 511 (Tex.Cr.App.1986, decided September 17, 1986) would not satisfy the rule of that case that, where probable cause is established in a suspect's presence, *and the confrontations with the suspect is not contrived* in order to permit an otherwise improper warrantless arrest, under circumstances which make it likely the suspect will flee, a warrantless arrest is permissible.

■ West's arrest occurred in a motel room; the instant arrest was at appellant's apartment, his permanent residence. No testimony was offered in the instant case to establish circumstances (other than the crime itself—see *West*, supra, tending to indicate that appellant would flee. Most important, the officers in the instant case, in addition to possessing what was in fact probable cause to obtain an arrest warrant, possessed knowledge of how further to strengthen their case without confronting appellant. We are constrained to hold the arrest to have been unlawful.

The illegality of the arrest does not stop our inquiry, however. As the State points out, the taint of the unlawful arrest may be removed by circumstances which intervene between the arrest and the giving of the confession. *Green v. State*, 615 S.W.2d 700, 707–708 (Tex.Cr.App.1980). In *Green* we stated:

> As identified in *Brown v. Illinois*, [422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975)], and reiterated in *Dunaway v. New York*, [442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979)] the factors to be considered in determining whether the confession has been obtained by exploitation of the illegal arrest, are
> (1) whether Miranda warnings were given;

(2) the temporal proximity of the arrest and the confession;

(3) the presence of intervening circumstances; and,

(4) the purpose and flagrancy of the official misconduct.

In the instant case, officers testified that the *Miranda* warnings were given. The reasons for the improper arrest appear to have encompassed both the continued investigation of the crime and the isolation of a known suspect against whom evidence had been gathered which was sufficient to establish probable cause. Although the action of removing a person from his residence without a warrant or exigent circumstances sufficient to authorize an arrest under Chapter 14, V.A.C.C.P., cannot be said to be entirely without flagrancy, the instant arrest was not so flagrant as, for example, an arrest made without probable cause.

The temporal proximity of the arrest to the confession in the instant case was close—a matter of some seven hours. It is therefore upon the question of intervening circumstances that the validity of the confession must turn.

 Appellant was not brought before a magistrate prior to or during the questioning process. The State relies upon the strong evidence held by the police as an attenuating factor:

> In any event, the record conclusively established that Appellant's decision to open up and give his statement was not caused by the illegal arrest or any public misconduct but rather was motivated by the realization that the police had overwhelming evidence against him (the State's view) or, if one considers trial testimony also, desire to make the police realize the killing was a mistake or an unfortunate accident and not an intentional killing (Appellant's view).

The State confounds motive with intervention. The Supreme Court of the United States recognized in *Brown*, supra, that "It is entirely possible ... that persons arrested illegally frequently may decide to con-

fess, as an act of free will unaffected by the initial illegality." 422 U.S. at 603, 95 S.Ct. at 2261. But that Court nonetheless required an analysis along the lines set out ante to determine whether the State has met its burden of showing that the taint did not affect the confession. We cannot accept evidence of guilt (which, if very strong, should obviate the need to offer the confession at trial) or a desire to partially exculpate oneself as *intervening* circumstances. Given the lack of attenuating factors, the court erred in overruling the motion to suppress insofar as it related to the confession and fruits of interrogation and in admitting the confession into evidence. Cf. *Self v. State*, 709 S.W.2d 662 (Tex.Cr.App.1986) and *Bell v. State*, 724 S.W.2d 780 (Tex.Cr.App.1986).

Appellant also contends that insufficient evidence was adduced to show that he knew that the victim was a police officer. Appellant's confession [4] leads us to wonder why this ground of error was presented:

> I got out and I heard a police car braking at the front. I ran directly across the street thru (sic) somebody's yard and hid in a bush. I then left there and ran easterly between some apartments on a walkway. The officer called me to halt and to lay on the ground. I think the first sentence was 'hands high and hit the ground.['] I did lay on the ground. I then got back up and he kept telling me to stop don't move. I don't remember him pulling his gun but I told him don't shoot, don't shoot. I don't know if I then threw something at him or not but I had a .22 magnum deringer in my back pocket. Me and the officer were facing each other and he had his light shining in my face and I had my hand strected (sic) out in front toward the officer, he kept telling me to get back on the ground. I ran and slipped and fell twice, the second time I fell in some bushes. All this time I hadn't pulled my gun but I had lost my glasses and couldn't see. He tried to hold me and

---

4. In determining the sufficiency of evidence, all the evidence is considered, whether or not prop-

erly admitted. *Collins v. State,* 602 S.W.2d 537 (Tex.Cr.App.1980).

cuff me and we fought and I struggled with him.

The officer never drew his gun but I drew mine. I tried to persuade him to back off but he didn't, he was very brave and the gun I guess didn't scare him. I kept telling him I got a gun, I got a gun and to back away. He grabbed my wrist that I had the gun in. He still had (sic) pulled his gun. We struggled and bounced off the fence and the gun I had went off and it missed. We were in such a battle him trying to take my gun away. I was worn out and we both were gasping for breath. He said 'you know if you shoot me' I don't remember what else he said. All I get in my mind is gas chamber. He told me to put the gun down and he wouldn't say I had shot at him. I regained my breath and struggled harder. (sic) We struggled and the gun hand I then could move. (sic) He went into a crouch position to draw his gun and the gun I had went off into the back of his head.

▇ Although the references to "the officer" and "a police car" could have been made from knowledge acquired after the act, the actions and words described were clearly those of a police officer. Who else, for instance, would go into a crouch position to draw his gun after having attempted to handcuff appellant? Furthermore, the detailed descriptions of the officer's actions render incredible appellant's contention that he could not see well enough to distinguish a police uniform from more than one foot away. The ground of error is clearly without merit.

Because of the erroneous admission of appellant's confession, the judgment is reversed and remanded.[5]

CLINTON, Judge, concurring.

By urging upon the Court the content excerpted from *Lacefield v. State*, 412

S.W.2d 906, 908 (Tex.Cr.App.1967), the dissenting opinion would take us back to golden days of yesteryears when an illegal arrest was perceived as a minor indiscretion unless the confessing prisoner later convinced a court that there was a "causal connection" between arrest and confession. See, e.g., *Dimery v. State*, 156 Tex.Cr.R. 197, 240 S.W.2d 293 (1951).*

To gain some understanding of the rationale of the rule rotely iterated in *Lacefield v. State*, supra, when we trace the rule back to a case that does not cite any authority for the proposition, we come to *Head v. State*, 160 Tex.Cr.R. 42, 267 S.W.2d 419 (1954). In his terse style the late Judge W.A. Morrison wrote:

> "It is the detention and not the arrest which this Court and the Supreme Court of the United States hold under some circumstances vitiates a confession. The confession introduced in evidence in this case was made shortly after appellant's arrest, and *there is no claim that it was made as the result of police brutality or long and uninterrupted questioning.*"

*Id.*, 267 S.W.2d at 422.

Though he did not mention it, Judge Morrison probably had in mind an opinion he had recently written on motion for rehearing in *Goleman v. State*, 157 Tex.Cr.R. 534, 247 S.W.2d 119 (1952), cert. denied 344 U.S. 847, 73 S.Ct. 60, 97 L.Ed. 659, rehearing denied, 344 U.S. 882, 73 S.Ct. 174, 97 L.Ed. 683. There he expounds on conventional wisdom then prevailing in this State: there must be a causal connection between failure to secure a warrant and obtaining a confession. *Id.*, 247 S.W.2d at 125. The point is made that a question of causal connection "is easily and practically answered in cases where force is used by officers in securing a confession," for the

---

5. Because we have held the confession to be inadmissible, we need not admonish the assistant district attorney that it would be highly improper for him to serve again as witness to the confession, then to resume conducting the State's case, then to argue to the jury (in effect to testify) that *his* version of events was more credible than was appellant's.

* "He was placed in jail. No formal complaint was filed against him. His arrest, detention, and incarceration appear to have been for the purpose of *holding him for investigation.*" *Dimery*, supra, 240 S.W.2d at 294. (All emphasis is mine throughout unless otherwise indicated.)

conclusion is that "the confession would not have been forthcoming had it not been for the coercion." On the other hand, "here, it would certainly be hypercritical to say that the mere failure to have a warrant in their hands was the cause of the confession being made." *Ibid.*

*Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 414 (1975), changed the equation: "In order for the causal chain, between the illegal arrest and the statements made subsequently thereto, to be broken, *Wong Sun* [*v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)] requires not merely that the statement meet the Fifth Amendment standard of voluntariness but that it be 'sufficiently an act of free will to purge the primary taint.' [citation omitted]. Wong Sun thus mandates consideration of a statement's admissibility in light of the distinct policies and interests of the Fourth Amendment." *Id.,* at 602, 95 S.Ct. at 2261.

The dissent protests "application of a federal doctrine, the test set out in *Brown v. Illinois* ..., to a situation in which *only* a State violation has occurred." P. 358.

Both the Fifth Amendment and Article I, § 10 of the Texas Bill of Rights rule out selfincrimination. Similar in this respect to the Fourth Amendment, Article I, § 9 of the Constitution of Texas guarantees that "[t]he people shall be secure in their persons.... from all unreasonable seizures." That constitutional protection is implemented by statutes.

In Texas "our courts, both civil and criminal, have consistently said that the arrest of a citizen without warrant is an unreasonable seizure of his person, unless it is expressly authorized by statute." *Heath v. Boyd,* 141 Tex. 569, 175 S.W.2d 214. (1943). "The right to arrest without warrant is conferred and controlled in this state only by statute, which must be construed in subordination to the constitutional guarantees against unreasonable seizures." *Giacona v. State,* 164 Tex.Cr.R. 325, 298 S.W.2d 587, 589 (1957). "The states are free to impose greater or additional restraints on police conduct than are required by the federal constitution," and

"[u]nquestionably [Article 14.04, V.A.C. C.P.] imposes greater restrictions on peace officers than does the federal constitution as interpreted by the United States Supreme Court." *Milton v. State,* 549 S.W.2d 190 (Tex.Cr.App.1977).

Given those greater restrictions on conduct of peace officers under the law of this State, this Court and other appellate courts are not precluded by the Fourth Amendment from determining under Article I, § 9 whether a confession has been obtained by exploitation of an illegal arrest according to minimal factors identified in *Brown v. Illinois,* and from imposing upon the State a similar burden of establishing that a confession was not the product of illegal arrest and detention. We followed *Brown v. Illinois* to that end in *Green v. State,* 615 S.W.2d 700 (Tex.Cr.App.1981), against competing arguments in a dissenting opinion.

With those considerations I join the opinion of the Court.

McCORMICK, Judge, dissenting.

The majority finds that probable cause existed to arrest appellant; the majority also finds that the warrantless arrest of appellant was improper because, although the State satisfied their Fourth Amendment burden, the additional State statutory burden of Article 14.04, V.A.C.C.P.,—"that the offender is about to escape"—was not satisfied. I understand and support this reasoning. However, I must dissent to the application of a federal doctrine, the test set out in *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), to a situation in which only a State violation has occurred.

Certainly nothing in *Brown* dictates its application when there is no federal constitutional violation. Justice Blackmum begins his opinion in *Brown* by noting that "[t]his case lies at the crossroads of the Fourth and Fifth Amendment." Indeed, the problem in *Brown* was that Brown's arrest was made without probable cause, a clear violation of the Fourth Amendment. This Court steadfastly applied *Brown* to cases involving Fourth Amendment viola-

tions until recently.[1] However, in *Bell v. State*, 724 S.W.2d 780 (Tex.Cr.App.1986, rehearing denied July 9, 1986), the majority of this Court, recognizing that they were not "bound" to do so, determined that the test set out in *Brown* would be applicable to violations of Articles 14.01 through 14.-04, V.A.C.C.P.

Prior to *Bell*, the Court's view of the Texas exclusionary rule, Article 38.23 V.A.C.C.P., as it applied to confessions taken on the heels of an illegal arrest was properly summed up in *Lacefield v. State*, 412 S.W.2d 906 at 908 (Tex.Cr.App.1967):

"There is no need to prolong the discussion of the question of the legality of the arrest for this court has repeatedly held, under the 1925 Code of Criminal Procedure, which is the statutory law applicable to the case at bar, that it is the illegal detention and not an illegal arrest which under certain circumstances will vitiate a confession. *Hughes v. State*, Tex.Cr.App., 409 S.W.2d 416 [(1966)]; *Dugger v. State*, 402 S.W.2d 178 [(1966)]; *Ward v. State*, Tex.Cr.App., 399 S.W.2d 567 [(1966)]; *Garza v. State*, Tex.Cr.App., 397 S.W.2d 847 [(1965)]; *Benitez v. State*, Tex.Cr.App., 377 S.W.2d 651 [(1964)]; *Smith v. State*, 171 Tex.Cr.R. 313, 350 S.W.2d 344 [(1961)]; *Head v. State*, 160 Tex.Cr.R. 42, 267 S.W.2d 419 [(1954)]. Therefore, a confession otherwise shown to have been voluntary is not rendered inadmissible by the fact that its author was under arrest or in custody at the time, even though the arrest may have been under invalid process or without any process or legal right.

"Nevertheless, appellant contends that in view of the decision in *Collins v. Beto* (5th Cir. [(1965)]), 348 F.2d 823, citing *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 [(1963)], the rule above stated no longer applies and a confession obtained as a result of an illegal arrest and introduced in a state criminal proceedings is in violation of the Fourth Amendment, U.S. Constitution and the exclusionary rule applicable to the states by virtue of the Fourteenth Amendment, U.S. Constitution. See *Mapp v. State of Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 [(1961)].

"Appellant's contention is without merit."

Prior to *Bell* when there was an improper arrest under State standards, a confession taken after the illegal arrest was improper only if it was involuntary. Since *Bell*, the majority of this Court has applied *Brown* to situations involving only State violations in *Self v. State*, 709 S.W.2d 662 (Tex.Cr.App.1986) and in the instant case. *Bell* and its progeny are clearly wrong. Article 38.23, supra, speaks solely to the inadmissibility of evidence which is illegally obtained. In a situation where a confession is clearly voluntary, despite the illegality of the arrest, the simple truth is that the confession has not been illegally obtained. Thus, the test enunciated in *Brown* cannot be harmonized with Article 38.23, supra.

Furthermore, I find no rationale for the application of *Brown* in these situations unless this Court also wishes to adopt the federal "good faith" exception announced in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), which logically should be just as applicable to Article 38.23, V.A.C.C.P., as *Brown* is.

For all of the above reasons, I dissent.

WHITE, J., joins in this opinion.

---

**1.** In his concurring opinion, Judge Clinton suggests that we applied the *Brown* test to a situation involving only a violation of Article I, Section 9, in *Green v. State*, 615 S.W.2d 700 (Tex.Cr.App.1981). However, a reading of *Green* shows that that case involved a Fourth Amendment violation in that the affidavit for the arrest warrant was totally conclusory and contained no basis for an independent determination of probable cause.