Steve JONES, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–87–00502–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 28, 1988.

Alex Bunin, Houston, for appellant.

John B. Holmes, Harris County Dist. Atty., William J. Delmore III, Joe Salhab, Harris County Asst. Dist. Attys., for appellee.

Before JACK SMITH, COHEN and HOYT, JJ.

## OPINION

JACK SMITH, Justice.

Appellant was indicted for burglary of a habitation. After his motion to suppress was denied, appellant pleaded guilty in a plea agreement. Pursuant to this agreement, the State abandoned the enhancement paragraph, and the trial court accepted appellant's plea, setting the punishment at 15 years confinement.

Initially, the State challenges the jurisdiction of this Court, claiming that appellant has failed to properly file a written notice of his appeal under Tex.R.App.P. 40(b)(1). The State contends specifically that: 1) the written notice filed was intended to serve as a record of an oral notice where a transcript is not available; 2) the rule requires filing by appellant, not by the clerk; and 3) in giving only oral notice of appeal, appellant failed to specify the pretrial rulings that he desired to raise on appeal.

We find that the State's argument is without merit. The notice in this case differs from that in the recent Court of Criminal Appeals case, *Shute v. State*, 744 S.W.2d 96 (Tex.Crim.App.1988), where the court found the notice to be insufficient. In *Shute*, the notice of appeal did not include the signature of appellant's counsel nor an indication of the scope of the appeal. Whereas here, the record reflects that written notice of appeal was entered of record on June 19, 1987. It included a notation limiting the appeal to the denial of the motion to suppress, and appellant's attorney's signature. Therefore, the notice met the requirements of Tex.R.App.P. 40(b)(1).

In his sole point of error, Appellant contends the trial court erred in overruling his motion to suppress evidence obtained by what he claims was an unlawful search and seizure. He contends specifically that there was no probable cause to effectuate his arrest. In order to properly evaluate this claim, we must consider all the facts presented at the suppression hearing.

As the movant in a motion to suppress evidence, a defendant must produce evidence that defeats the presumption of proper police conduct. *Russell v. State*, 717 S.W.2d 7, 9 (Tex.Crim.App.1986). Once a defendant has established that a search or seizure occurred and that no warrant was obtained, the burden shifts to the State. *Id.* Then, the State must show that the arrest was within an exception to the warrant requirement. *Beasley v. State*, 728 S.W.2d 353, 355 (Tex.Crim.App.1987). We strictly construe exceptions to the warrant requirement. *Dejarnette v. State*, 732 S.W.2d 346, 349 (Tex.Crim.App.1987). The constitutional validity of a warrantless arrest can only be decided by the specific factual situation in each individual case. *King v. State*, 631 S.W.2d 486, 497 (Tex.

Crim.App.), *cert. denied,* 459 U.S. 928, 103 S.Ct. 238, 74 L.Ed.2d 188 (1982).

Testimony at the hearing indicates that Deputy Richard Shaw was dispatched to the 11900 block of Plum Meadow on a "suspicious male" call. No crime was attributed to the "suspicious male" by the dispatcher. The description referred to a black male wearing a gray t-shirt. The deputy received the dispatch between 11:35 to 11:40 a.m.; it took the deputy approximately 10 minutes to arrive at the scene. About 10 to 15 minutes after arriving, the deputy observed an individual matching the description given by the dispatcher. The described person was walking towards the deputy carrying a blanket with what appeared to be some items wrapped in it. As appellant crossed in front of the patrol car, the deputy asked him to stop. The deputy noticed that appellant was very nervous, "that his legs were shaking." The deputy asked appellant where he was going, and appellant replied that he was running away. Appellant further stated that he was 19 years old. Upon hearing this response, the deputy stated that he became suspicious because he considered it improbable that a 19 year old, above the age of consent, would be running away. Appellant was unable to produce identification. When appellant placed the blanket he was carrying on the ground, it fell open, and the deputy observed a video cassette recorder in the blanket. At this point, the officer arrested appellant for suspicion of burglary, "moved" appellant over to the patrol car and read him his *Miranda* warnings.

The deputy confiscated the blanket, and found that it contained the video recorder, a telephone, a pair of black shoes, a coffee can filled with pennies, a piggy bank filled with pennies, a pellet pistol, a gold chain, a gold-colored chain, a cable box, a watch, six pairs of white socks, and a blue tote bag. The deputy testified that he then called the dispatcher to see if there had been any reports of burglaries in the area. When none were reported, the deputy began a search along the bayou where he had initially seen appellant. A few minutes later, appellant told the deputy that he would take him to the house that he had burglarized. Upon arriving at the house, the deputy discovered that a kitchen window was open, as well as the back door, and that several items seemed to be missing. The deputy called the owner of the house, who identified the property found in appellant's possession as his.

It is the State's contention that appellant was detained only temporarily for investigating, an "investigative detention" as approved by *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). This contention appears contrary to the testimony of the arresting officer, who stated that appellant was under arrest. However, the question of whether an individual is under arrest is not to be determined solely by the opinion of the arresting officer. *Hoag v. State,* 728 S.W.2d 375, 378 (Tex.Crim.App. 1987). Rather, the officer's opinion is but one factor to be considered, "along with the other facts and circumstances of the detention, in determining whether an arrest has taken place." *Id.* at 379.

Tex.Code Crim.P.Ann. art. 15.22 (Vernon 1977) states that: "A person is arrested when he has been actually placed under restraint or taken into custody ... by an officer ... without a warrant." An arrest is complete when the person's liberty of movement is restricted or restrained. *Brewster v. State,* 606 S.W.2d 325, 327 n. 6 (Tex.Crim.App.1980).

In the instant case, the officer testified that after he stopped the appellant, questioned him, and saw the video recorder, he seized appellant's blanket, placed appellant in the patrol vehicle, and proceeded to drive appellant around the neighborhood, surveying houses. Because the deputy placed appellant in the vehicle and drove him around the neighborhood, appellant was "placed under restraint"; therefore the deputy effected a warrantless arrest.

We next determine whether the warrantless arrest was proper. Tex.Code Crim.P. Ann. arts. 14.01–14.04 (Vernon 1977 & Supp.1988), enumerate the circumstances

under which an officer can effectuate a valid warrantless arrest in Texas.

■ Article 14.01 provides that a person may be arrested without a warrant for any offense committed in an officer's presence or within his view. Arguably, appellant possessed stolen goods in the presence of the deputy; and therefore, the arrest was proper. However, probable cause to substantiate that belief must still be shown. U.S. Const. amend. IV.

The test of probable cause for a warrantless arrest is: "Whether at that moment the facts and circumstances within the officer's knowledge and of which (he) had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the (arrested person) had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964); *Muniz v. State*, 672 S.W.2d 804, 806 (Tex.Crim.App.1984).

The record at the hearing indicates that the officer received a "suspicious person" report between 11:35 and 11:40 a.m., describing a black male with a gray t-shirt. There was no indication as to why the person was "suspicious." It took the officer approximately 20 to 30 minutes to arrive at the scene and locate appellant. The officer observed appellant carrying a blanket over his shoulder and walking along the bayou, on public property, behind a row of houses. Appellant walked directly in front of the police vehicle. When the deputy asked him to stop, he did so. He was visibly nervous, stated that he was running away, that he was 19 years old, and was unable to produce identification. When appellant placed the blanket down on the ground, the contents became visible, and the deputy saw a video cassette recorder. At this point, the deputy arrested appellant.

Any indication that a crime had been committed is visibly missing from these facts. There had been no reports of any burglaries in the area. The call reporting the suspicious person never stated why the person described was suspicious; therefore the suspicious call alone, did not indicate that a crime had been committed. *Smith v. State*, 542 S.W.2d 420 (Tex.Crim.App. 1976). The arrest was made during the day, about noon. Finally, the deputy testified that the only item that he saw, the video cassette recorder, had "no indicia of being stolen."

The Court of Criminal Appeals recently held in *Hoag v. State*, 728 S.W.2d at 375, that the following facts were not sufficient for probable cause for a warrantless arrest. The officers received a report of a burglary. Witnesses gave a general description of appellant and the license number of appellant's car. The witnesses, however could not positively identify a photo of appellant. Appellant was currently on parole for burglary. The officers placed appellant under surveillance. The officers observed him parking in an apartment complex, walk a few blocks into a neighborhood, approach a house, knock on the door, look around "suspiciously," walk around the side of the house to the back yard and then return to his car. He also looked at another house. The officers finally followed appellant to another apartment complex. He was there for about 30 minutes and left carrying a newspaper and a canned drink. He opened the car door, took something out of his pocket, and put it on the car floor. The officers quickly checked the complex, found no evidence of burglary, but still detained appellant's vehicle. The court held that it could not conclude from these facts whether appellant committed a burglary or possessed stolen property in the officers' presence. *Id.* at 379.

■ Based on the facts of the instant case, we find that there were insufficient facts available to the deputy at the time of the arrest to show probable cause for making the arrest. We also find that based on this evidence there was no probable cause for an arrest under article 14.03(a)(1), allowing warrantless arrests of persons found in suspicious places under circumstances that reasonably show that such persons have been guilty of some felony. *Hoag v. State*, 728 S.W.2d at 375. Therefore, the arrest was unlawful.

We next consider whether the illegal arrest tainted appellant's statements, thus rendering them inadmissible as evidence against him.

 The use of a statement resulting from an illegal arrest offends the fourth amendment guarantee against unreasonable search and seizure, and for that reason, a mere showing that the statement or confession was voluntarily given under the terms of the fifth amendment will not remove the taint of the unlawful arrest. *Brown v. Illinois*, 422 U.S. 590, 602, 95 S.Ct. 2254, 2261, 45 L.Ed.2d 416 (1975). "In order for the causal chain, between the illegal arrest and the statements made subsequent thereto, to be broken, *Wong Sun* requires not merely that the statement meet the [f]ifth [a]mendment standard of voluntariness but that it be 'sufficiently an act of free will to purge the primary taint.'" *Id.* (*quoting Wong Sun v. United States*, 371 U.S. 471, 486, 83 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963)).

In *Brown*, the Court listed four factors relevant to the determination of whether a confession is the product of a free will: (1) whether *Miranda* warnings were given; (2) the temporal proximity of the arrest and the confession; (3) the presence of intervening circumstances; and, (4) the purpose and flagrancy of the official misconduct. *Brown v. Illinois*, 422 U.S. at 603–04, 95 S.Ct. at 2261–62. The Texas Court of Criminal Appeals has adopted the *Brown* analysis to be applied to violations of articles 14.01 through 14.04. *Bell v. State*, 724 S.W.2d 780, 787 (Tex.Crim.App.1986), *cert. denied*, — U.S. ——, 107 S.Ct. 910, 93 L.Ed.2d 860 (1987); *Self v. State*, 709 S.W. 2d 662, 665–66 (Tex.Crim.App.1986).

 In the present case, the deputy gave appellant his *Miranda* warnings at the time of the arrest. The giving of *Miranda* warnings is merely a threshold requirement; without them, a confession may not be deemed voluntary, *Brown v. Illinois*, 422 U.S. at 604, 95 S.Ct. at 2262, but the mere giving of the warnings does not establish that the statement was unrelated to the unlawful arrest. *Id.* at 602, 95 S.Ct. at 2261. Even repeated warnings alone are not enough to purge the taint of an otherwise illegal arrest. *Taylor v. Alabama*, 457 U.S. 687, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982).

With regard to the time factor in the present case, the record shows that a "few moments" elapsed between the arrest and appellant's statement. Both *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, and *Self v. State*, 709 S.W.2d 662, found "hours" to be insufficient time to render the statements unrelated to the illegal arrest. However, the Texas Court of Criminal Appeals noted in *Bell* that the temporal proximity factor is unreliable and has little meaning as a determinative factor when taken alone. *Bell v. State*, 724 S.W.2d at 788 n. 4. Much more important than the time span itself is the presence of intervening occurrences *during* the time lapse that might have broken the causal connection between the arrest and confession. *See Beasley v. State*, 728 S.W.2d at 353. However, there were no intervening circumstances in the present case.

The State has not met its burden of showing that the taint of the illegal arrest did not affect the confession. There is no evidence that the confession did not flow from the arrest; therefore, nothing creates an attenuation between the arrest and the statement. *Bell v. State*, 724 S.W.2d at 789; *see Brown v. Illinois*, 422 U.S. at 603, 95 S.Ct. at 2261.

*Beasley v. State*, 728 S.W.2d at 353, involved an arrest made without a warrant, but *with* probable cause. In that case, the defendant orally confessed to the police within seven hours of his arrest. The State argued on appeal that the defendant's decision to give a statement was not caused by his illegal arrest, but by the realization that the police had overwhelming evidence against him, or by his desire to make the police realize that the killing was accidental, rather than intentional. The Court responded:

The State confounds motive with intervention ... We cannot accept evidence of guilt ... or a desire to partially excul-

pate oneself as *intervening* circumstances.

728 S.W.2d at 356.

■■■ The court in *Bell* cites examples of intervening circumstances that might be sufficient to purge the taint of an illegal arrest. Such circumstances include: 1) the appearance before a magistrate; 2) the termination of the illegal custody; 3) the consultation with counsel; and 4) a volunteered statement not made in response to police interrogation. *Bell v. State,* 724 S.W.2d at 789. These are clear examples of what Justice Powell described as "some demonstrably effective break in the chain of events leading from the illegal arrest to the statement." *Brown v. Illinois,* 422 U.S. at 611, 95 S.Ct. at 2265 (concurring opin.). A statement given to a police officer only minutes after the arrest is not of the same caliber as the examples cited in *Bell.* Therefore, the third factor can not render appellant's statements admissible.

The final factor, described by the Court in *Brown* as particularly important, is the purpose and flagrancy of the illegal police conduct. *Brown v. Illinois,* 422 U.S. at 604, 95 S.Ct. at 2262. The present case involves an arrest that was both warrantless and without probable cause.

In *Beasley,* the court held that: "[a]lthough the action of removing a person from his residence without a warrant or exigent circumstances sufficient to authorize an arrest under Chapter 14, V.A.C. C.P., cannot be said to be entirely without flagrancy, the instant arrest was not so flagrant as, for example, *an arrest made without probable cause.*" [Emphasis added.] *Beasley v. State,* 728 S.W.2d at 356.

However, the police conduct in the instant case was not as reprehensible as in *Brown,* where the "manner in which Brown's arrest was effected gives the appearance of having been calculated to cause surprise, fright and confusion." *Brown v. Illinois,* 422 U.S. at 605, 95 S.Ct. at 2262. The arrest in the instant case was "for investigation"; the deputy acted in the hope of turning up evidence that a crime had been committed. "An expedition for evidence in the hope that something might turn up," was suggested as improper both in *Brown v. Illinois,* 422 U.S. at 605, 95 S.Ct. at 2262, and *Beasley v. State,* 728 S.W.2d at 353. In the instant case, the police conduct, though clearly questionable, cannot be said to have risen to a level of "flagrancy," as in *Brown.*

The *Brown* analysis in this case, leaves us with issues two and three strongly for appellant and issues one and possibly four in favor of the State. The *Brown* analysis produced the same result in *Bell v. State.* There the court concluded:

> In summary, the temporal proximity [within 1½ to 3 hours] and intervening circumstances factors militate heavily against admission of appellant's first confession. The repeated *Miranda* warnings do not significantly affect the conclusion. Concerning the fourth factor, the police conduct here certainly does not shock the conscience of this Court. An otherwise inadmissible confession … however, should not be made admissible simply because the police conduct was not too reprehensible. To so hold would blatantly subject the protection of fundamental rights to the vagaries of the collective (elected) conscience of this Court, which we decline to do.

724 S.W.2d at 790–91.

The court in *Bell* concluded that the confession was inadmissible. The *Beasley* court also ruled that the confession was inadmissible. Although the question of whether a confession is the product of free will must be answered on the facts of each case, *Brown v. Illinois,* 422 U.S. at 603, 95 S.Ct. at 2261, we find no attenuating factors sufficient to justify admission of appellant's statement.

■■■ Finally, we consider whether such error was harmless. The test for harmless error, even where the error is constitutional, is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction or affected the punishment. *Self v. State,* 709 S.W.2d 662, 668 (Tex. Crim.App.1986). A judgment will not be

reversed for admission of evidence that did not injure the accused. *Prior v. State,* 647 S.W.2d 956 (Tex.Crim.App.1983). In the present case, at the time of appellant's statements, there was no indication of a burglary in the neighborhood. Appellant's statement alone led the deputy to the burglarized house and to the eventual truth that the items were stolen. This was the only evidence of appellant's guilt. Under such facts, we conclude that the admission into evidence of appellant's statements to the officer, after appellant's illegal arrest, was manifestly harmful.

The trial court erred in denying appellant's motion to suppress. Appellant's first point of error is sustained.

The judgment of the trial court is reversed, and the cause is remanded to the trial court.