**Elvis BLACK, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–83–00297–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Oct. 13, 1988.

Rehearing Denied Dec. 1, 1988.

Discretionary Review Refused
March 22, 1989.

Randy Schaffer, Schaffer, Lambright, Odom & Sparks, Houston, for appellant.

James C. Brough, Winston E. Cochran, Asst. Dist. Attys., Harris County, for appellee.

Before JACK SMITH, SAM BASS and STEPHANOW, JJ.

OPINION ON REMAND FROM THE
COURT OF CRIMINAL APPEALS

JACK SMITH, Justice.

The Court of Criminal Appeals has reversed our judgment that affirmed appel-

lant's conviction. That court held that appellant's arrest was illegal and has ordered us to determine whether his illegal arrest tainted his oral confession. *Black v. State,* 739 S.W.2d 240, 245 (Tex.Crim.App.1987).

Appellant was indicted for murder. After the motion to suppress his confession was denied, the jury found appellant guilty and assessed punishment at 25 years confinement. On appeal, the Fourteenth Court of Appeals affirmed the conviction. Appellant filed a post-conviction writ of habeas corpus alleging ineffective assistance of appellate counsel. The Court of Criminal Appeals granted appellant's writ and allowed him an out-of-time appeal. On his second appeal, this Court held that his arrest was legal, making the oral confession admissible. The Court of Criminal Appeals reversed our opinion, holding that the arrest for alleged traffic violations was merely a "pretext to get around the warrant requirement." *Id.* at 245. We now address whether the illegal arrest tainted the oral confession.

On February 1, 1979, Harris County Deputies set up surveillance on appellant's apartment and car. When appellant departed in his car, he was followed by the officers. He drove to a nearby bar, and in the process the officers observed him violate several traffic laws. The officers parked behind appellant's car, approached appellant, and informed him that he was under arrest for suspicion of murder. The arrest took place at 8:55 p.m. The officers read appellant his rights and searched the vehicle. After nothing was found in appellant's car, the officers had appellant sign a consent to search his apartment. They then drove to appellant's apartment, searched for evidence for an hour, then proceeded to the Sheriff's Department for interrogation. Meanwhile, appellant's roommate, Anthony Candelari, was arrested at work and also taken to the Sheriff's Department for questioning.

About midnight, both men consented to a polygraph examination at the offices of Morris Covin, a local private investigator and a reserve officer in the Sheriff's De-partment. Covin, who personally administered the polygraph test, repeated the process of notifying appellant of his rights, which appellant acknowledged that he understood. Covin gave appellant two polygraph examinations, both of which, in Covin's opinion, indicated that appellant was being deceptive. Covin told appellant that his test indicated that he was being deceptive. Covin then took appellant to a nearby room, where one of the deputies continued the interrogation. During this interrogation, about 3:30 a.m., appellant allegedly admitted that he remembered shooting the complainant twice while in the car.

The United States Supreme Court has held that the use of a statement resulting from an illegal arrest offends the fourth amendment guarantee against unreasonable search and seizure, and for that reason, a mere showing that the statement or confession was voluntarily given under the terms of the fifth amendment will not remove the taint of the unlawful arrest. *Brown v. Illinois,* 422 U.S. 590, 602, 95 S.Ct. 2254, 2261, 45 L.Ed.2d 416 (1975). "In order for the causal chain, between the illegal arrest and the statements made subsequent thereto, to be broken, *Wong Sun* requires not merely that the statement meet the [f]ifth [a]mendment standard of voluntariness but that it be 'sufficiently an act of free will to purge the primary taint.'" *Id.* (*quoting Wong Sun v. United States,* 371 U.S. 471, 486, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963)).

In *Brown,* the court listed four factors relevant to the determination of whether a confession is the product of free will: (1) whether *Miranda*[1] warnings were given; (2) the temporal proximity of the arrest and the confession; (3) the presence of intervening circumstances; and, (4) the purpose and flagrancy of the official misconduct. *Brown v. Illinois,* 422 U.S. at 603–04, 95 S.Ct. at 2261–62. The Texas Court of Criminal Appeals has adopted the *Brown* analysis to be applied to violations of Tex. Code Crim.P.Ann. arts. 14.01–.04 (Vernon 1977 & Supp.1988). *Bell v. State,* 724 S.W. 2d 780, 787 (Tex.Crim.App.1986), *cert. de-*

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

*nied,* 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860 (1987); *Self v. State,* 709 S.W.2d 662, 665–66 (Tex.Crim.App.1986).

In the present case, the deputy gave appellant his *Miranda* warnings at the time of the arrest, and appellant was again warned prior to undergoing the polygraph test. However, the giving of *Miranda* warnings is merely a threshold requirement; without them, a confession may not be deemed voluntary, *Brown v. Illinois,* 422 U.S. at 604, 95 S.Ct. 2262, but the mere giving of the warnings does not establish that the statement was unrelated to the unlawful arrest. *Id.* at 602, 95 S.Ct. at 2261. Even repeated warnings alone are not enough to purge the taint of an otherwise illegal arrest. *Taylor v. Alabama,* 457 U.S. 687, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982) (the giving of warnings on three separate occasions was not sufficient to remove taint).

With regard to the time factor in the present case, the record indicates that six and one-half hours passed between the time of arrest and the oral confession. However, we note that these hours were in the middle of the night, with the confession occurring at 3:30 a.m. Both *Brown v. Illinois,* 422 U.S. at 590, 95 S.Ct. at 2254, and *Self v. State,* 709 S.W.2d at 662, found the passage of "hours" to be insufficient to show that the statements were unrelated to the illegal arrest. *See also Garrison v. State,* 642 S.W.2d 168 (Tex.Crim.App.1982) (court held that given facts of the case that time lapse of over 12 hours was not sufficient to attenuate the taint of the arrest), and *Beasley v. State,* 728 S.W.2d 353, 356 (Tex.Crim.App.1987) (court held that temporal proximity of seven hours "was close"). Additionally, the Texas Court of Criminal Appeals noted in *Bell* that the temporal proximity factor is unreliable and has little meaning as a determinative factor when taken alone. *Bell v. State,* 724 S.W.2d at 788 n. 4.

Much more important than the time span itself is the presence of intervening occurrences *during* the time span that might have broken the causal connection between the arrest and confession. *See Beasley v.*

*State,* 728 S.W.2d at 353. The court in *Bell* cites examples of intervening circumstances that might be sufficient to purge the taint of an illegal arrest. Such circumstances include: 1) the appearance before a magistrate; 2) the termination of the illegal custody; 3) the consultation with counsel; and 4) a volunteered statement not made in response to police interrogation. *Bell v. State,* 724 S.W.2d at 789; *see Barber v. State,* 737 S.W.2d 824, 832 (Tex.Crim.App. 1987) (court held that appellant being taken before a magistrate was an intervening circumstance). These are clear examples of what Justice Powell described as "some demonstrably effective break in the chain of events leading from the illegal arrest to the statement." *Brown v. Illinois,* 422 U.S. at 611, 95 S.Ct. at 2265 (Powell, J., concurring).

The record reflects that there was no point in time that appellant was not either: (1) being interrogated; (2) having his home and car searched; or (3) being transported to another location for further questioning. Additionally, appellant was never taken before a magistrate, the illegal arrest was not terminated, he never spoke to an attorney, and his initial confession was in response to questioning by the deputies.

The State has not met its burden of showing, through intervening circumstances, that the taint of the illegal arrest for the suspicion of murder did not affect the confession. There is no evidence that the confession did not flow from the arrest; therefore, nothing creates an attenuation between the arrest and the statement. *Bell v. State,* 724 S.W.2d at 789; *see Brown v. Illinois,* 422 U.S. at 603, 95 S.Ct. at 2261.

The final factor, described by the Court in *Brown* as particularly important, is the purpose and flagrancy of the illegal police conduct. *Brown v. Illinois,* 422 U.S. at 604, 95 S.Ct. at 2262. The present case involves an arrest for suspicion of murder that was both warrantless and without probable cause. In the instant case, the deputies had appellant under surveillance as a murder suspect. They followed appellant, and after he reached his destination,

arrested him under the "pretext" of traffic violations with the express purpose of questioning him about the murder of the complainant. We note that although the police stopped appellant for traffic violations, he was not arrested for those violations, but for suspicion of murder.

In *Beasley,* the court held that: "[a]lthough the action of removing a person from his residence without a warrant or exigent circumstances sufficient to authorize an arrest under Chapter 14, V.A.C.C.P., cannot be said to be entirely without flagrancy, the instant arrest was not so flagrant as, for example, *an arrest made without probable cause." Beasley v. State,* 728 S.W.2d at 356 (emphasis added).

Despite the lack of probable cause for an arrest for suspicion of murder, the police conduct in the instant case was not as over-zealous nor as reprehensible as in *Brown,* where the "manner in which Brown's arrest was effected gives the appearance of having been calculated to cause `surprise, fright and confusion." *Brown v. Illinois,* 422 U.S. at 605, 95 S.Ct. at 2262. The arrest in the instant case was for questioning; the deputies acted in the hope of turning up evidence that appellant was the perpetrator of the murder. However, "[a]n expedition for evidence in the hope that something might turn up," was suggested as improper both in *Brown v. Illinois,* 422 U.S. at 605, 95 S.Ct. at 2262, and *Beasley v. State,* 728 S.W.2d at 353.

The *Brown* analysis in this case leaves us with factors two and three in favor of appellant and factors one and possibly four in favor of the State. The *Brown* analysis produced the same result in *Bell v. State.* There the court concluded:

> In summary, the temporal proximity [within 1½ to 3 hours] and intervening circumstances factors militate heavily against admission of appellant's first confession. The repeated *Miranda* warnings do not significantly affect the conclusion. Concerning the fourth factor, the police conduct here certainly does not shock the conscience of this Court. An otherwise inadmissible confession ... however, should not be made

admissible simply because the police conduct was not too reprehensible. To so hold would blatantly subject the protection of fundamental rights to the vagaries of the collective (elected) conscience of this Court, which we decline to do.

724 S.W.2d at 790–91.

The court in *Bell* concluded that the confession was inadmissible. The *Beasley* court also ruled that the confession was inadmissible. *But see Self v. State,* 709 S.W.2d at 662 (court held that despite the fact that there were no intervening circumstances and the confession occurred within two hours after the arrest, the taint was overcome, making the confession admissible). Although the question of whether a confession is the product of free will must be answered on the facts of each case, *Brown v. Illinois,* 422 U.S. at 603, 95 S.Ct. at 2261, we find no attenuating factors sufficient to justify admission of appellant's statement.

Finally, we consider whether such error was harmless under Tex.R.App.P. 81(b)(2). Rule 81(b)(2) states that unless the court can determine that the error, beyond a reasonable doubt, did not contribute to the conviction, then the judgment of the trial court shall be reversed.

■ Excluding the confession, the State's evidence consisted principally of the testimony of appellant's roommate, Anthony Candelari. Candelari stated that he and appellant were out drinking on the night of the murder until about 1:45 a.m. While drinking, they saw and spoke with the complainant. When they got home, appellant told Candelari that he was going to "roll" the complainant. Candelari allowed appellant to borrow his car. Later, when appellant returned to the apartment, he said that he had shot the complainant. Candelari asked appellant if he was sure that the complainant was dead. Appellant stated that he did not know and asked to borrow Candelari's knife. Appellant then left again. The body of the complainant was found along the side of the road early that morning.

The actual murder weapon was a .25 caliber pistol, which was never recovered. However, a knife was also used on the victim, and it was found in the possession of Candelari when he was arrested. Additionally, the vehicle where the murder allegedly took place and where a bullet was found lodged in the door, belonged to Candelari. Finally, the steel putty used to repair the door belonged to Candelari.

Appellant, testifying in his own defense, stated that he never confessed to killing the complainant. Appellant stated that he was at home, sick, during the time that the complainant was murdered. Appellant contended that it was Candelari who committed the murder. To support this contention, Candelari's supervisor, Perry Guillory testified that Candelari left work early on the day of the murder and had intimated his desire to "roll" someone.

Without the confession, the jury had to decide whether to believe appellant or Candelari. Therefore, we cannot hold that the error in admitting the confession did not contribute to the conviction, beyond a reasonable doubt. The trial court erred in overruling appellant's motion to suppress.

The judgment is reversed and the cause remanded.